Judge Trimble,
_ . . delivered the following opinion of the court: — Nicholas Myers, and Rebecca, his wife, late Rebecca Young, exhibited their bill against Peter Young, George Caldwell, and John and Edward Loveless, in which they state, that in the year-Peter Young had a negro woman who was pregnant, and not having the means of supporting her, during the illness inseparable from her condition, applied to the said Re-beeca’s mother, and agreed if she would take care of the said negro woman, and support her during her illness, that the said Rebecca (then sole, and under age) should have the child with which the said negro woman was then pregnant, at the death of the said Peter Young, The complainants, in their bill, aver that the negro woman was received into the family, and taken care of by the said Rebecca, until she recovered of her illness ; that she was delivered of a girl child ; and that the said Rebecca furnished the child with clothes, until the child was seven years old ; and, when called on by the defendant, Peter, furnished money to pay the taxes due for it. The bill further states, that the defendant, Peter, is between sixty and seventy years of age, and cannot, from his state of health, live long; that he, until lately, acknowledged the said Rebecca’s right, at his death, to the girl, now (that is, at the filing of the bill) about 13 years old ; but that lately, through peevishness, the instability of extreme old age, and other causes, to the complainants unknown, he has taken offence ; and in order to deprive the said Rebecca of said girl at his death, has sold her to the defendant, George Caldwell, for $180; one half less, as they allege, than her real value ; and they charge Caldwell with having received notice of their claim before his purchase ; and, that the two Lovelesses *552 are about to take the girl down the Mississippi, into the Spanish dominion. The prayer of the bill, is for an injunction and ne exeat, and for general relief.
The defendant, Peter Young, in his answer, says that before the negro woman lay in, he was at his brother John’s.(father of the complainant, Rebecca), and asked him if his woman might lie in at his house, to which he consented ; that he was again at his brother’s, after the child was born, and in a jovial conversation with Rebecca Young (then a girl not grown), he did say, that if the child was well taken care of, he would give it to her after his death ; that he never requested Rebecca to clothe the child, and never máde any contract, either with her or any of the family, binding himself to give her the child, otherwise than in the loose conversation before mentioned. He says he had often thought of giving the negro girl to Rebecca by will; but that from the improper conduct of her husband, he has determined not to do it, as the complainant, Nicholas, has claimed her now, in his, the said Peter’s lifetime, as by a letter of said Nicholas, which he refers to, will appear. The defendant, Peter, denies having ever called upon Rebecca to pay the taxes for the girl, &c. and admits that he has sold her to George Caldwell, as he insists he had a right to do.
Caldwell, in his answer, admits he purchased and obtained possession of the negro girl from Peter Young, for a fair and valuable consideration. He denies that the complainants have any title to the girl; says that he was a purchaser, without notice that they had any title, except that he had heard some flying reports in the neighborhood, of their setting up some claim, which, before he purchased, he had heard contradicted. He denies that he had ever sold the girl to the two Lovelesses, although he admits they were upon a contract for her, which has broken off. He insists that they are entitled to relief, if at all, only against Peter Young ; but prays, if a decree should pass against him, that he may have a decree over against the said Peter.
Upon the hearing of the cause, the circuit court were of opinion that the contract was sufficiently proven ; that the complainants had a right to the girl, at the death of Peter Young ; and decreed that Peter Young and George Caldwell should give bond, with approved security, in. *553 ⅛6 penalty of 400/. conditioned to be void upon the delivery of the said girl, and her increase, if any, to the complainants, within 30 days after the deáth of Peter Young. But as it appears that the complainant, Nicholas, had produced the dispute by his improper conduct towards the said Peter Yoiirig, the cofcpláiiíaats dfe directed to pay the costs!
Frota this decree, Peter Young and George Caldwell prayed, and obtained an appeal to this court ; ánd the errors assigned, call in question thé merits of the decfefe.
A number of depositions have been taken in the cause, from which it does not clearly appear, whether the transaction ought to be viewed as a contract or sale of the girl, upon a consideration received ; of whether it should he viewed ds a promise of a bounty; induced by the pef-formance of good offices on the Other side. It is, however, hot necessary tb say which ; because, admitting it to have Been ah executory contract,upon a sufficient consideration, for the delivery of the girl, at thé death of Peter Young, the coinplainants can háve rib title to relief in a court of equity.
It is a well established general rule, that a cburt of chancery will hot decree the specific execution of á contract relating to a chattel personal; but will leáve the vendee to Bis remedy at law.
To this general fule, there have been Some few exceptions ; as, where the contract has been solemnly made; and reduced to writing ; ahd where the vendefe would receive some extraordinary injury, wfere the covenant not specially performed, presently; But chancellors have repeatedly declared, that the general rule ought to be cautiously departed from ; ahd that beforé süch á contract will be decreed, it must appear to be certain, fiill; and fair, in every respect: otherwise, as the chancellor exercises' a discretion in decrefeirig specific performance (a), he will riot decree it; Here; there is nd extraordinary injfery pretended, (arid, indeed, none cari be pretended, in a contract for the sale of a slave) nor has the contract bfeeri made With the solemnity of thbsfe contracts heretofore made by chancellors exceptions tb the general rulé.
Indeed, it is believed, thefe is no ihstanfee where a patrol executory contract, cbrieferning a personal chattel, ⅛⅛ been specifically decreed: ánd it would be of very *554 dangerous example, to make a precedent of the kind. It would furnish too great a temptation to attempt the conversion of loose conversations, into solemn agreements, after a great lapse of time ; to the disquiet of families, and the disturbance, of purchasers.
As well might a bill be brought to enforce the specific execution of a contract for the sale of a horse, stock, or merchandize, as in this case ; and it has been held, in all of these cases, that specific performance ought not to be dedreed (a).
By our law, slaves are transfered as chattels, ánd can only beTi time das chattels may be; and they partake, in all their qualities, except that of descent, of the nature of personal estate : the same rules, therefore, ought to govern contracts respecting them.
There is no precedent, where chancery has pursued a personal thing sold, into the hands of a second purchaser, with notice in favor of the first vendee; but in all such cases, the first vendee has been left to his rémedy at law, against the vendor, for damages for breach of his contract; and we can discover no solid reason for making such a precedent in the case of slaves.
Here, the complainants clearly had no present interest, or title at law ; but, at most, only an executory contract for a future gift, or delivery ; a mere chose in action, in a personal chattel, incapable of being pursued into the hands of Caldwell, the purchaser.
It is to be lamented, that the wife, by the impatience and avarice of the husband, has probably been deprived of the intended bounty of her uncle: but her fate is wedded to his. He would not wait till the old man had paid the debt of nature, but became impatient for pre-sentpossession ; and because he could not obtain it, got angry and . wept to law. He must, therefore, submit to the fate which the law has decreed him.
It is, therefore, decreed and ordered, that the said decree of the said circuit court shall be, and the same is hereby reversed, annulled and set aside ; and the suit is remanded to the court from whence it came, with direcr tions to dismiss the bill of the complainants, with costs; but without prejudice to any suit at law, which they, or either of them, may think proper to commence, after the death of Peter Young, against his personal representar lives ; and it is further decreed and ordered, that the *555 appellees pay to the appellants, their costs in this behalf expended, Which is ordered to be certified to said court.*

⅛) 2 Vez 238 —3 Atk. 389 —2 Pow, on Cont. 259 — 1 Bro. C. C. 75 * — i Ves. jun» 565.

Ab. 161 — i Ab. 107. Bac. (a) 1 Pr.Wmi. 570 — 5 Vm. Bunb. ’ 135 2Eq.Ca.Ab.

 The grounds upon which fpeeific decrees, in cafes relating to chattels, are made, will be found in I Vern. 273 — 3 Pr. Wras, 389 — 3 Ves. jun. 70 ' — 2 Vern. 394 — 3 Ack, 383 — 2 Br« P. C. 415 — -i Bac. Ab. 107,